UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA POOL,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:16-cv-1889-EFB<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further consideration.

I. BACKGROUND

Plaintiff filed an application for a period of disability and DIB, alleging that she had been disabled since November 2, 2010. Administrative Record ("AR") 174-175. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 115-119, 121-125. On June 23, 2014, a hearing was held before administrative law judge ("ALJ") Odell Grooms. *Id.* at 37-76. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

1

On October 29, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1]  *Id*. at 17-29.  The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since November 2, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

\* \* \*

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3. The claimant has the following severe impairments: cervical degenerative disc disease with traumatic exacerbation due to motor vehicle accident; lumbar degenerative disc disease; bipolar disorder; and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently handle and finger with the bilateral upper extremities; she can frequently reach overhead with the bilateral upper extremities; she can frequently stoop, kneel, crouch, and crawl; she can perform simple tasks in a setting with no more than occasional changes in the workplace and no more than occasional interaction with the general public.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born [in] 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 2, 2010, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 14-22.

1  Plaintiff's request for Appeals Council review was denied on June 20, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) rejecting opinions from her treating physicians, Dr. Dennehy and Dr. McReynolds; (2) weighing the opinion of examining physician Dr. Latow; and (3) failing to fully develop the record. ECF No. 16 at 7-13. As discussed below, the ALJ erred in weighing the opinion of Dr. Latow. Accordingly, the matter will be remanded for further proceedings and the court declines to address plaintiff's remaining arguments.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know

and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

With respect to plaintiff's psychiatric limitations, the ALJ evaluated the opinions of treating physician Dr. McReynolds and examining physician Dr. Latow. The ALJ assigned "little weight" to the opinion of Dr. McReynolds, and "significant," but not "full weight" to the opinion of Dr. Latow. AR 26-27.

Dr. McReynolds opined that plaintiff had fair to poor mental abilities to perform various work activities and noted moderate impairment in memory and concentration. *See* AR at 1226-27 (including understanding and remembering instructions, attending and sustaining concentration, interacting with the public, coworkers, and supervisors, and adapting to changes); *id.* at 1144. According to Dr. McReynolds, plaintiff would be "unable to cope [with] any significant level of stress," and would be precluded from "functioning in any work situation . . . ." *Id.* at 1146. Dr. McReynolds further opined that plaintiff is "permanently disabled for any and all occupations." *Id.* at 1147.

Dr. Latow's opinion largely tracks the opinion of Dr. McReynolds. Dr. Latow opined that plaintiff would have "significant difficulty" performing tasks consistently in a normal workplace

5

and noted moderate impairment in concentration. *Id.* at 1110-11. He added that plaintiff "would have difficulty getting along with other people" and "may especially have difficulty responding appropriately to close supervision and negative feedback that may occur in the workplace." *Id.* at 1111. Further, Dr. Latow opined that plaintiff is "not able" to manage the pace of a normal workday, nor the change or stress of a normal workday. *Id.*

Though not expressly stated, the ALJ essentially rejected Dr. Latow's opinion. The ALJ purported to assign it "significant" but not "full weight." *Id.* at 26. But in doing so, the ALJ misstated the evidence regarding the severity of plaintiff's limitations. As stated above, Dr. Latow found that plaintiff was "not able" to manage the pace or the changes that occur during a normal workday. *Id.* at 1111. In summarizing this opinion, the ALJ minimized Dr. Latow's findings, stating only that plaintiff had "difficulties" in those areas. *Id.* at 26. The ALJ's residual functional capacity assessment partially reflects this mischaracterization of Dr. Latow's findings. *See id.* at 22 (allowing for "occasional changes in the workplace"). The ALJ's residual functional capacity assessment also entirely omits Dr. Latow's limitations with respect to managing the pace, change, and stress of a normal workday. *See id.* at 22 (determining that plaintiff "can perform simple tasks in a setting with no more than occasional changes in the workplace and no more than occasional interaction with the general public."). Because there is no conflicting opinion in the record contrary to Dr. Latow's opinion, the ALJ was required to provide clear and convincing reasons for rejecting it. *See Lester*, 81 F.3d at 831.

The ALJ's only reason for not giving "full weight" to Dr. Latow's opinion is that "it is not consistent with the objective medical evidence and the record as a whole . . . ." AR at 26. The ALJ's only statement in support of this reason is that "the findings from mental status examinations were benign (Exs. 5F; and 12F)." *Id.* However, the ALJ's own summary of plaintiff's mental status examinations detracts from his conclusion that the findings were "benign." For example, the ALJ observed the following:

> Mental status examinations during the relevant period revealed labile effect, anxious and irritable mood, agitated motor activity, flight of ideas, poor concentration, slow processing thought, decreased mood, restricted affect, and inability to spell 'world' backwards on one occasion (Exs. 5F; and 12F).

*Id.* at 24. The ALJ went on, noting that plaintiff had also "received inpatient treatment for a few days for suicidal ideations after she had an argument with her boyfriend. *Id.* Dr. Latow's examination of plaintiff, also discussed by the ALJ, "revealed that [plaintiff] was frantic, hyperverbal, withdrawn, emotional, labile, and tearful with rapid speech with uneven rate and rhythm." *Id.*

The ALJ was required to do more than offer his own conclusion that the findings from plaintiff's mental status examinations were benign, a conclusion that is inconsistent with Dr. Latow's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Instead of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," the ALJ failed to even identify which specific findings he viewed as benign. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Because the ALJ made no effort to explain how he arrived at that conclusion, there is no way for this court to determine which of Dr. Latow's findings he rejected, or why. For these reasons, the court finds that the ALJ failed to provide clear and convincing reasons for rejecting Dr. Latow's opinion, and his findings were not supported by substantial evidence in the record. *See Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion."). Accordingly, remand is appropriate for further consideration of Dr. Latow's opinion. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this opinion; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: September 28, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE